Darren J. Devlin, Esq. [SBN 176261]
darren@resolutionfunding.net
Law Offices of Jason C. Tatman, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA 92121
(844) 252-6972
Fax (858) 348-4976
Attorney for Plaintiff Antonio Caballero

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ANTONIO CABALLERO | ) CASE NO. 20-cv-06019 |
| | ) |
| | ) |
| Plaintiff, | ) **Plaintiff's Ex Parte Motion[1] for** |
| vs. | ) **Issuance of Post-Judgment Writ** |
| | ) **of Execution Pursuant to Section** |
| FUERZAS ARMADAS | ) **201(a) of the Terrorism Risk** |
| REVOLUCIONARIAS DE COLOMBIA, | ) **Insurance Act of 2002** |
| a/k/a FARC-EP a/k/a REVOLUTIONARY | ) |
| ARMED FORCES OF COLOMBIA; and | ) |
| THE NORTE DE VALLE CARTEL | ) |
| | ) |
| Defendants. | ) |
| | ) |

[1] Because this case does not have a Judge assigned, this Motion does not have the date and time of the hearing or the name of the Judge who will be hearing the Motion.

**TABLE OF CONTENTS**

A.   Brief Procedural Background ........................................................................ 1

B.   Brief Factual Background ............................................................................. 2

C.   Collections of ATA Judgments under the ATA and TRIA ........................... 3

D.   The Terrorism Risk Insurance Act .............................................................. 4

   i.   The Judgment Is Against a Terrorist Party ................................................ 7

      1.   The Law Provides a Broad Definition of Agents or Instrumentalities ................. 8

      2.   This Motion is Supported by the Sworn Declarations of a Highly Qualified Former OFAC Official ............................................................................. 9

      3.   Montelongo is an agent or instrumentality of the FARC ..................... 10

   ii.   The Claim Is Based on an Act of Terrorism ............................................ 11

   iii.   The Accounts Are "Blocked Assets" of a Terrorist Party ...................... 11

   iv.   Execution Helps Satisfy Mr. Caballero's Award for Compensatory Damages ...... 13

E.   California Execution Statutes Govern Procedure ....................................... 13

F.   Conclusion ................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020)...............................................................................................passim

*Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 729-730 (11th Cir. 2014)..................................................................................................................passim

*Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006)...............................5, 7, 11

**Statutes**

18 U.S.C. § 2333(e) ...................................................................................................1, 12

28 U.S.C. § 1963 ..............................................................................................................2

50 U.S.C. §§ 1701–1706 .................................................................................................11

8 U.S.C. § 1182 ................................................................................................................7

California Code of Civil Procedure, Sections 695.010 through 709.30.................... 6, 13-14

Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note) ....1, 4, 7, 12

**Other Authorities**

148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) ............................................................4

U.S. Dep't Treasury, Revised Guidance on Entities Owned by Persons Whose Property and Interests in Property are Blocked, (Aug. 13, 2014) ........................................................12

**Regulations**

31 C.F.R. § 594.802.........................................................................................................11

Plaintiff's Ex Parte Motion for Issuance of Post-Judgment Writ of Execution Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, Case No. 20-cv-06019

Plaintiff Antonio Caballero, by and through undersigned counsel, moves for the issuance of a Court ordered writ of execution to enforce his Final Judgment pursuant to: (i) the Anti-Terrorism Act ("**ATA**"), 18 U.S.C. § 2333(e); (ii) Section 201(a) of the Terrorism Risk Insurance Act of 2002 ("**TRIA**"), Pub. L. No. 107-297, § 201(a), 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note); (iii) Rule 69 of the Federal Rules of Civil Procedure; (iv) Section 701.010(a) of the California Code of Civil Procedure; (v) *Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 729-730 (11th Cir. 2014) (concluding that in actions to enforce judgments against terrorists "factors weigh in favor of immediate attachment"); and (vi) L.R. 7-10, Ex Parte Motions.

This Motion is accompanied by an Order on Motion for Default Final Judgment, D.E. 62 at 1, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (the "**ATA Final Order**"), **Exhibit 1** hereto; the Sworn Declaration of John Robert McBrien ("**Sworn Declaration**"), **Exhibit 2** hereto; and, a proposed Writ of Execution (EJ-130) and accompanying Notice of Levy (EJ-150), **Exhibit 3** hereto.

## MEMORANDUM OF LAW

### A. Brief Procedural Background

On May 20, 2020, Chief Judge Michael K. Moore of the United States District Court for the Southern District of Florida ("**S.D. Fla.**") entered a Final Judgment in

favor of Plaintiff Antonio Caballero and against Defendants Fuerzas Armadas Revolucionarias de Colombia ("**FARC**") and the Norte del Valle Cartel ("**NDVC**"). *See* D.E. 63, *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, No. 18-25337 (S.D. Fla. May 20, 2020) (the "**ATA Final Judgment**").  Pursuant to 28 U.S.C. § 1963, Plaintiff registered the ATA Final Judgment with this Court on August 14, 2020 [D.E. 1] and may now enforce his ATA Final Judgment like any judgment issued from this Court.  *See* 28 U.S.C. § 1963 ("A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.")

### B. Brief Factual Background

As recounted by a Florida state court and accepted by the federal Court in the S.D. Fla., the "Plaintiff, his father, and his family owned and operated farms and properties in the central regions of Colombia, in an area that was strategically located along the defendants' drug trafficking route." *See* Ex. 1, ATA Final Order at p. 2. "ELN forces kidnapped Plaintiff's father, who was the former Ambassador to the United Nations, a leading politician, and an outspoken critic of narcotics traffickers in Colombia, to send a message to other potentially uncooperative landowners in the region that resistance to the defendants' demand would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *Id.*

"Then, ELN and FARC, abused and tortured Plaintiff's father over a period of approximately six months before brutally murdering him." *Id.*

After reviewing Plaintiff's federal court Complaint filed under the ATA, the record in the federal court, and a final judgment entered after a non-jury trial in Florida state court under different theories of recovery, the Court in the S.D. Fla. entered an order on Motion for Default Judgment entering  Final Judgment in favor of Plaintiff Antonio Caballero and against the FARC and NDVC for $45 million in actual compensatory non-economic damages, which it trebled under 18 U.S.C § 2333 (2020), $1,729,667.00 in actual compensatory economic damages, which it trebled under § 2333, and a post-judgment interest rate of 0.15% per annum. *Id*. at p. 14.

### C. Collections of ATA Judgments under the ATA and TRIA

As explained more fully below, Congress has recognized that it is difficult for terrorism victims to recover on their judgments.  By passing TRIA and amending the ATA, Congress has allowed terrorism victims to satisfy the compensatory damages portion of their judgments from the blocked assets of the terrorist defendants ***and*** from the blocked assets of any agency and instrumentality of the terrorist defendants.

Through post-judgment discovery efforts in the S.D. Fla. action, Plaintiff Antonio Caballero has learned that non-party SoundExchange, Inc. is holding blocked assets in the putative name of, or for the benefit of, an agent and instrumentality of the FARC in a bank account located in San Francisco.  In accordance with the law and

evidence discussed below, Plaintiff Antonio Caballero respectfully requests that this Court determine that Julio Cesar Alvarez Montelongo ("**Montelongo**") is an agent or instrumentality of the FARC and authorize the issuance of a Writ of Execution to be served upon SoundExchange, Inc. for any blocked assets it is holding in the putative name of, or for the benefit of, such agent or instrumentality.

### D. The Terrorism Risk Insurance Act

In 2002, Congress enacted TRIA to govern certain post-judgment attachment proceedings for cases involving terrorist attacks. Congress sought to "deal comprehensively with the problem of enforcement of judgments issued to victims of terrorism in any U.S. court by enabling them to satisfy such judgments from the frozen assets of terrorist parties." 148 Cong. Rec. S11524, at S11528 (Nov. 19, 2002) (statement of Sen. Harkin). Section 201(a) states:

> *Notwithstanding any other provision of law*, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605A or 1605(a)(7) . . . , the blocked assets of that terrorist party **(including the blocked assets of any agency or instrumentality of that terrorist party)** shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a) (emphasis added).

4

In other words, a victim holding an unsatisfied judgment against a terrorist party can collect so long as the following requirements are met: first, the victim "has obtained a judgment against a terrorist party." *Weininger v. Castro*, 462 F. Supp. 2d 457, 479 (S.D.N.Y. 2006). Second, "the judgment is either (a) for a claim based on an act of terrorism, or (b) for a claim for which a terrorist party is not immune under § 1605(a)(7)." *Id.* Third, "the assets are 'blocked assets' within the meaning of TRIA." *Id.* Lastly, the "execution is sought only to the extent of any compensatory damages." *Id.* All elements are satisfied here.

Additionally, to execute against a terrorist party's "agency or instrumentality," the victim "must further establish that the purported agency or instrumentality is actually an agency or instrumentality." *Stansell v. Revolutionary Armed Forces of Columbia [sic]*, 771 F.3d 713, 723 (11th Cir. 2014).  The agency or instrumentality standard was created to reach beyond the terrorists' efforts to stay in the shadows by using "straw persons" or other layers of affiliated companies and persons as fronts. As the Eleventh Circuit put it, "[o]n the other hand, terrorist organizations such as FARC operate in the shadows out of necessity.  For example, a corporation organized under Florida law will almost certainly not list FARC as a shareholder of record. Instead, it will operate through layers of affiliated individuals and front companies." *Stansell*  771 F.3d at 732.  The Eleventh Circuit has also recognized that terrorist and money laundering operations are "clandestine" such that a plaintiff can even establish

5

the agent or instrumentality relationship as being indirect. *Id.* at 732, 742. In fact, the standard can be met even if the blocked party has never previously been linked to the terrorist party. *Id.* at 739 ("The Partnerships had not previously been directly linked to FARC by OFAC or any other executive or judicial authority.")

Per the Eleventh Circuit's holding in *Stansell*, a terrorist victim may apply *ex-parte* for an agent or instrumentality determination by a court because the alleged agencies and instrumentalities are not entitled to a hearing before the issue of a writ of attachment, but only before turnover. *Stansell*, 771 F.3d at 729.[2]  In its extensive due process analysis, the Eleventh Circuit concluded that "[m]ere attachment is a minimally intrusive manner" of reducing the risk of fleeting assets. *Id.* Thus, Mr. Caballero has moved ex-parte for the issuance of the writ of execution described herein. *Id.* ("Because the factors weigh in favor of immediate attachment, Claimants were not constitutionally entitled to a hearing before the writ issued. In sum, Claimants were entitled to notice and to be heard before execution, though not necessarily before attachment.").

---

[2] Because *Stansell*, 771 F.3d at 729, has interpreted TRIA to authorize the filing of an ex parte motion, Plaintiff satisfies LR 7-10. *See also* 699.030 of the California Code of Civil Procedure.

### i.  The Judgment Is Against a Terrorist Party

The first element under TRIA—that "a person has obtained a judgment against a terrorist party"—is met. *Weininger*, 462 F. Supp. 2d at 479. The Defendant FARC is a "terrorist party." *See* ATA Final Order, D.E. 62 at 1. TRIA defines a "terrorist party" as a "terrorist" or as a "terrorist organization (as defined in section 212(a)(3)(B)(vi) of the Immigration and Nationality Act [("INA")] (8 U.S.C. 1182(a)(3)(B)(vi)) . . . ." TRIA § 201(d)(4). Under the INA, a "terrorist organization" includes: (1) any organization designated as a Foreign Terrorist Organization under 8 U.S.C. § 1189, see 8 U.S.C. § 1182(a)(3)(B)(vi)(I); (2) any organization designated, upon publication in the Federal Register, as a terrorist organization for engaging in terrorist activities, see 8 U.S.C. § 1182(a)(3)(B)(vi)(II); and (3) any organization "that is a group of two or more individuals, whether organized or not, which engages in, or that has a subgroup which engages in, [terrorist activities as defined in 8 U.S.C. § 1182(a)(3)(B)(iv)(I)–(VI)] . . . . " *See* 8 U.S.C. § 1182(a)(3)(B)(vi)(III).

The Southern District determined that the Defendants' conduct constituted an act of international terrorism. *See* ATA Final Order at 6. The Southern District found that the Defendants kidnapped Caballero's father in Colombia, tortured him for approximately six months, and then killed him "to send a message to other potentially uncooperative landowners in the region that resistance to (or failure to comply with)

7

Defendants' demands would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *See id.* (quoting Compl. at ¶ 5).

Moreover, in 2001, the United States designated the FARC as a Specially Designated Global Terrorist under Executive Order 13224, and in 2003, the U.S. President designated the FARC as a Specially Designated Narcotics Trafficker pursuant to the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. §§1901–1908.

### 1. The Law Provides a Broad Definition of Agents or Instrumentalities

In *Stansell*, the Eleventh Circuit adopted the District Court's definition of "agency or instrumentality" for TRIA purposes. 771 F.3d at 724 n.6. An "agency or instrumentality" is any person, entity, drug cartel, or organization that: (1) "materially assist[ed] in, or provid[ed] financial or technological support for or to, or provid[ed] goods or services in support of the international narcotics trafficking activities of a specially designated narcotics trafficker . . . [FARC]"; "and/or" (2) was "owned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker . . . [FARC]"; "and/or" (3) "play[ed] a significant role in international narcotics trafficking [related to coca paste or cocaine manufactured or supplied by the FARC]." *See id.*

Plaintiff's Ex Parte Motion for Issuance of Post-Judgment Writ of Execution Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, Case No. 20-cv-06019

### 2.  This Motion is Supported by the Sworn Declarations of a Highly Qualified Former OFAC Official

This Motion is supported by the Sworn Declaration and Supplemental Declaration of John Robert McBrien.  *See* Ex. 2 hereto.  By way of background, Mr. McBrien was formerly the Associate Director for Global Targeting in the Office of Foreign Assets Control ("OFAC"), the U.S. Treasury Department's sanctions organization.  *See* Ex. 2. Sworn Declaration at ¶ 1.   He held that position from May 2005 to December 2011, when he retired from the Treasury Department.  *Id.*  At all times during his employment with OFAC, Mr. McBrien was in charge of its designations operations. *Id.*  This covered the period from November 1987 to and throughout the formal creation of OFAC's Office of Global Targeting (OGT) in 2005. *Id.*

Mr. McBrien was in charge of the designations programs of OFAC for more than 24 years. *Id.* OFAC's Office of Global Targeting is charged with investigating and identifying the foreign entities and individuals that are designated under OFAC's Specially Designated Nationals ("SDN") programs directed against the principals, operatives, and networks of sanctioned countries, regimes, and non-state foreign adversaries.  *Id.*   Mr. McBrien is also an authority in the employment of U.S. economic sanctions programs and had a seminal role in the conception, design, and development of the Specially Designated Nationals list and targeted sanctions against

9

non-state foreign adversaries. *Id*. ¶ 2.   His initiatives have been a key factor in the development of economic sanctions as a major instrument of national security policy. *Id.*   During his nearly 25 years with OFAC, Mr. McBrien participated in the development of every sanctions Executive Order issued in that period and in the implementation of the resulting sanctions programs.  *Id.*

### 3. Montelongo is an agent or instrumentality of the FARC

Mr. McBrien has opined that Montelongo is an agent and instrumentality of the FARC. *See* Ex. 2, Sworn Declaration at ¶ 11.   Mr. McBrien further opined that Montelongo is an integral member of the Flores Drug Trafficking Organization (the "Flores DTO").  *Id.* (citing U.S. Department of the Treasury Office of Foreign Asset Control publication: "Flores Drug Trafficking Organization August 2017 – Individuals").  According to Mr. McBrien entities linked to the Flores DTO include entities linked to Montelongo.  *Id.* (citing U.S. Department of the Treasury Office of Foreign Asset Control publication: "Flores Drug Trafficking Organization August 2017 – Entities").  Thus, with regard to Montelongo, Plaintiff Antonio Caballero has established through competent evidence submitted to this Court that the aforementioned is an agent and instrumentality of the FARC, whose assets are subject to execution under TRIA and the ATA.  *See* Ex. 2, Sworn Declaration at ¶¶ 34-35.

### ii.  The Claim Is Based on an Act of Terrorism

The ATA Final Judgment satisfies the second element of TRIA because it is "for a claim based on an act of terrorism." *Weininger*, 462 F. Supp. 2d at 479. The Southern District found that the Defendants' conduct constituted an act of international terrorism. *See* ATA Final Order at 6. That court found that the Defendants' kidnapped Caballero's father in Colombia, tortured him, and then killed him to "send a message to other potentially uncooperative landowners in the region that resistance to (or failure to comply with) Defendant's demand would not be tolerated and would result in them being targeted for kidnapping for ransom and/or assassination." *See id. (*quoting Compl. at ¶ 5).

### iii.  The Accounts Are "Blocked Assets" of a Terrorist Party

To satisfy the third element of TRIA, the assets must be "blocked" assets within TRIA's meaning. *Weininger*, 462 F. Supp. 2d at 479. This is the case here.

As a preliminary matter, OFAC administers various economic sanctions programs authorized by the IEEPA. *See* 50 U.S.C. §§ 1701–1706.[3] OFAC's power includes the authority to "designate" persons and entities to thus "block" that person

---

[3] In 2001, the President issued Executive Order 13224 (**"E.O. 13224"**) under the IEEPA, authorizing the Secretary of Treasury to block certain assets and to promulgate related rules and regulations. The Secretary of Treasury delegated that authority to OFAC. *See* 31 C.F.R. § 594.802. E.O. 13224 also gives the Secretary of State blocking power.

Plaintiff's Ex Parte Motion for Issuance of Post-Judgment Writ of Execution Pursuant to Section 201(a) of the Terrorism Risk Insurance Act of 2002, Case No. 20-cv-06019

or entity's assets. Only assets that are "blocked" are executable under TRIA. TRIA

defines "blocked assets" as "any asset seized or frozen by the United States under

section 5(b) of the Trading With the Enemy Act (50 U.S.C. App. 5(b)) [(**"TWEA"**)]

or under sections 202 and 203 of the [IEEPA]." TRIA § 201(d)(2)(A).

Here, statutory authority for execution under TRIA is also found under the

Antiterrorism Act. *See* 18 U.S.C. § 2333(e) (2020). If a terrorist party is designated as

a Specially Designated Narcotics Trafficking Kingpin ("SDNTK") under the Kingpin

Act, assets of such Kingpin are blocked assets also executable under TRIA. *See id.*

Further, if one or more blocked persons, either directly or indirectly, owns in the

aggregate 50 percent or more of an entity, that entity is considered a blocked person.

*See* U.S. Dep't Treasury, Revised Guidance on Entities Owned by Persons Whose

Property and Interests in Property are Blocked, (Aug. 13, 2014).  As explained by Mr.

McBrien, the assets of Montelongo are all considered blocked assets. *See* Ex. 2, Sworn

Declaration at ¶¶ 34-35.

Here, discovery has revealed that non-party SoundExchange, Inc. is holding

blocked assets in the putative name of, or for the benefit of, Montelongo.  Because

Montelongo is a blocked party, his assets are deemed blocked and available to satisfy

the compensatory damages portion of Mr. Caballero's ATA Final Judgment under

TRIA and Section 2333(e) of the ATA.

### iv. Execution Helps Satisfy Mr. Caballero's Award for Compensatory Damages

The last element for execution under TRIA requires that "execution is sought only to the extent of any compensatory damages." *Weininger*, 462 F. Supp. 2d at 479. The ATA Final Judgment awarded Mr. Caballero $45 million in actual, compensatory non-economic damages, and $1,729,667.00 in actual compensatory economic damages. *See* ATA Final Judgment at 1. Because Mr. Caballero seeks enforcement only as to the outstanding portion of the compensatory damages award (i.e. $45,810,635.02) plus interest, this TRIA requirement is satisfied.[4]

### E.  California Execution Statutes Govern Procedure

Federal Rule of Civil Procedure 69(a)(1) governs post-judgment TRIA executions. *See Stansell,* 771 F.3d at 730 (holding that TRIA did not preempt Florida collections statutes such that the plaintiff needed to follow the requirements of Florida law applicable in that case).   Because TRIA does not preempt the California Code of Civil Procedure, such procedure governs the procedural steps necessary to execute on the ATA Final Judgment.

As Plaintiff's ATA Final Judgment is a money judgment, the procedural aspect of these collection proceedings is governed by Sections 695.010 through 709.30,

---

[4] Mr. Caballero has collected some funds from his earlier state court action and has subtracted that amount from his compensatory damages award in the federal ATA case in order to arrive at the total set forth herein.

California Code of Civil Procedure, appliable to the collection of money judgments. Pursuant to Section 699.080(a)(3), (5) and (7), a writ of execution is the proper writ used to attach personal property, deposit accounts and accounts receivable or general intangibles.  The Writ of Execution and notice of levy may be served on a third person pursuant to Section 701.010(a), California Code of Civil Procedure and is enforceable against all property unless otherwise provided by law pursuant to Section 699.710, California Code of Civil Procedure.

Undersigned counsel has attached hereto as Exhibit 3 a proposed Writ of Execution (EJ 130) and accompanying Notice of Levy (EJ 150).  Because Plaintiff Antonio Caballero has met the requirements set forth in TRIA, the ATA, and the California Code of Civil Procedure, he respectfully requests that the Court grant him the relief set forth below.

### F. Conclusion

Julio Cesar Alvarez Montelongo is an agent or instrumentality of the FARC. The blocked assets of Montelongo are "blocked assets" under TRIA.

**WHEREFORE** Plaintiff requests entry of an Order:

    i.    Determining that Julio Cesar Alvarez Montelongo is an agent or instrumentality of the FARC; and

ii.    Determining that Julio Cesar Alvarez Montelongo's assets are blocked assets and are executable under TRIA towards satisfaction of the ATA Final Judgment.

iii.    Authorizing the issuance of a Writ of Execution to attach any assets within this Court's jurisdiction in the putative names of, held for the benefit of, or that were blocked due to their association with, Julio Cesar Alvarez Montelongo.

**DATED this 27th day of August 2020.**

Respectfully Submitted,

*/s/ Darren J. Devlin*
Darren J. Devlin, Esq. [SBN 176261]
darren@resolutionfunding.net
Law Offices of Jason C. Tatman, A.P.C.
5677 Oberlin Drive, Suite 210
San Diego, CA  92121
Tel: (844) 252-6972
Fax (858) 348-4976

Joseph I. Zumpano (Florida Bar Number: 0056091)
*Pro Hac Vice* Motion Pending
E-mail address: jzumpano@zplaw.com
Leon N. Patricios (Florida Bar Number: 0012777)
*Pro Hac Vice* Motion Pending
E-mail address: lpatricios@zplaw.com
ZUMPANO PATRICIOS, P.A.
312 Minorca Avenue
Coral Gables, FL 33134
Telephone: (305) 444-5565
Attorneys of Record for Plaintiff Antonio Caballero